UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In Re:

                            Chapter 7

Joseph Yerushalmi,

                            Case No.:  07-72816-478

                    Debtor.
---------------------------------------------------------------X
Marc A. Pergament, Chapter 7 Trustee of the
Estate of Joseph Yerushalmi,

                    Plaintiff,

    - against -                         Adv. Pro. No.: 09-08003-478

Malka Yerushalmi, Joseph Yerushalmi and Malka
Yerushalmi, as Trustees for the September 7, 1995
Qualified Personal Residence Trust,

                    Defendants.
---------------------------------------------------------------X

### MEMORANDUM DECISION AND ORDER

*Appearances:*

Weinberg Gross & Pergament LLP
*Attorneys for the Plaintiff Marc A. Pergament, Chapter 7 Trustee*
By: Marc Weingard, Esq.
400 Garden City Plaza
Garden City, New York 11530

Forchelli, Curto, Crowe, Deegan, Schwartz, Mineo & Cohn LLP
*Attorneys for Defendant Joseph Yerushalmi*
By: Gary M. Kushner, Esq.
330 Old Country Road
P.O. Box 31
Mineola, New York 11501

LaMonica Herbst and Maniscalco
*Attorneys for Defendant Malka Yerushalmi*
By: Shannon A. Scott, Esq.
3305 Jerusalem Avenue
Wantagh, New York 11793

The Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the motion of Defendant Joseph Yerushalmi to dismiss the Complaint filed by the Chapter 7 Trustee and the Trustee's motion to amend his Complaint.  The court has jurisdiction pursuant to 28 U.S.C. §1134(a) and (b).  This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), and (O) and 11 U.S.C. §§ 541, 542, 544, 548, and 550.  The following constitutes the Court's finding of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  For the following reasons, the Defendant's motion to dismiss is denied, and the Trustee's motion to amend his Complaint is granted.

<u>FACTS</u>

The Defendants, Joseph Yerushalmi (the "Debtor") and Malka Yerushalmi ("Malka") were married in 1971.  The couple had three children during the course of their marriage.  Their youngest son, Danny, was born in April 1983 and was diagnosed with dysautonomia, a terminal disease.  The Debtor contends that in 1989, doctors informed him that in spite of such illness and disability Danny may outlive him and his wife.  As a result, the Yerushalmis borrowed $1 million, secured by a first mortgage on their home at 157 West Shore Road, Great Neck, New York (the "Marital Residence") to implement changes to the Marital Residence primarily to accommodate Danny's special needs.

In 1995, the Yerushalmis consulted an estate-planning lawyer purportedly to plan for the long-term care of Danny.  The Debtor asserts that the family attorney advised him and his wife to create a qualified personal residence trust pursuant to the grantor trust provisions under the U.S. Internal Revenue Code. An irrevocable qualified personal residence trust (the "Trust") was formed pursuant to a Trust Agreement dated September 7, 1995 (the "Trust Agreement").  The

Trust Agreement does not contain any language regarding the purpose or intention with respect to the formation of the Trust.

The Debtor transferred his ownership interest in the Residence to Malka as evidenced by a deed dated March 29, 1996 ("Transfer I"). Malka in turn transferred the entire fee interest in the Marital Residence to the Trust by deed dated May 9, 1996 ("Transfer II"). The deeds memorializing Transfers I and II were recorded several months apart. The Residence is the sole asset of the Trust.

Malka was the grantor of the Marital Residence that was transferred to the Trust. She and the Debtor were the trustees of the Trust. Pursuant to the terms of the Trust Agreement, the grantor has the right to the exclusive use, possession and enjoyment of any personal residence held by the Trustees. The trustees of the Trust were permitted to lease the Marital Residence to the grantor for a term exceeding the term of the Trust on condition that the rental under such lease shall be a fair market rental.

The Trust would terminate upon the earlier of the death of Malka or 23 years. If Malka dies before the expiration of the 23 year term of the Trust, the Marital Residence will be transferred to Malka's executor or administrator to be disposed of as part of her estate. If Malka survives the 23 year term of the Trust, then the Marital Residence would be transferred to another trust created by the Debtor back in July of 1989.

After Danny passed away in 2002, the Yerushalmis continued to occupy the Marital Residence. The Yerashalmis subsequently filed for divorce in 2003. In accordance with a temporary *pendent lite* order dated December 1, 2003, the Debtor was directed in the divorce action to pay, among other things, the existing mortgage and other carrying charges of the Marital Residence. Thereafter, by decision and order dated March 15, 2004, the matrimonial

court granted Malka's application to, *inter alia*, direct the Debtor again to make payments for the mortgage and all of the carrying charges associated with the Marital Residence. The Trust is still the fee owner of the Marital Residence even though the purported purpose of its creation to provide for Danny's long term care no longer exists.

On March 31, 1995, prior to the establishment of the Trust and the transfer of the Marital Residence to the Trust, the Debtor terminated his relationship with Yerushalmi, Shiboleth, Yisraeli and Roberts, LLP ("YSYR"), a law firm of which he was a named partner. On April 10, 1998, Amon Shiboleth, one of the Debtor's former partners, individually and on behalf of YSYR, sought an accounting for YSYR (the "Accounting Action") due to alleged diversions of YSYR receivables collected by the Debtor after January 20, 1998. The Accounting Action was filed three years after the creation of the Trust and two years after Transfers I and II.

The Accounting Action resulted in the entry of judgment dated March 7, 2007 against the Debtor and in favor of Amon Shiboleth and YSYR in the total amount of $3,540,045.91 ("Shiboleth Judgment"). This amount was charged against the Debtor, individually, in the amount of $2,036,272.09 and against the Debtor and his new firm, Yerushalmi & Associates LLP, jointly and severely, in the amount of $1,503,773.82.

On July 25, 2007, the Debtor filed for chapter 11 relief under the Bankruptcy Code. On October 2, 2007, the case was converted to one under Chapter 7 and Marc A. Pergament, Esq. was appointed the Chapter 7 Trustee (the "Trustee" or "Plaintiff"). On January 5, 2009, the Trustee commenced this adversary proceeding by filing the Complaint alleging ten claims for relief. The first four claims seek (1) to avoid Transfers I and II and recover the Marital Residence for the benefit of the estate pursuant to 11 U.S.C. §§ 544(b) or 548 or (2) alternatively to recover $2,500,000 plus interest in damages for the benefit of the chapter 7 bankruptcy estate

on the grounds that Transfers I and II are fraudulent conveyances. Pursuant to claims five through ten, the Trustee seeks to avoid the expense payments the Debtor personally made with his personal funds with respect to the required monthly Mortgage payments, real estate taxes, and insurance payments in regards to the Marital Residence.

In response, the Debtor filed a motion to dismiss the Complaint asserting that the first four claims for relief should be denied because these claims were time barred. Under New York state law claims for constructive and intentional fraud are governed by a six-year statute of limitations. Transfers I and II occurred more than 6 years from the date the adversary proceeding was commenced. In addition, the Debtor argues that claims five through ten should be dismissed because (1) Trustee failed to join Citibank, N.A., the mortgagee with respect to the Marital Residence as a proper and necessary party and (2) the expense payments were made in exchange for fair consideration. In addition, the Debtor argues that the Trustee failed to plead fraud with particularity for the ninth and tenth claims. Although Malka separately filed an answer in response to the Complaint, Malka joined in the Debtor's motion to dismiss and asserted that the Trustee filed the Complaint in bad faith.

Subsequently, the Trustee filed a motion to amend his Complaint and an affirmation in opposition to the motion to dismiss. Acknowledging that the six-year statute of limitations was a bar to his initial Complaint, the Trustee withdrew his claims for relief on the grounds of fraudulent conveyance and stated instead that his adversary proceeding sought a claim for relief pursuant to 11 U.S.C. §§ 541 and 542 and that he was seeking to pierce the veil of the Trust to declare that the Trust is the Debtor's alter ego in order to support his action based on the judgment obtained by Amon Shiboleth against the Debtor in the Accounting Action. Trustee alleges that the Debtor used his control of the Trust to engage in fraudulent conveyances to

shield his assets from the reach of creditors.  Trustee asserts that as in precedent cases such as *Wm. Passalacqua*, *Inc., v. Resnick Developers South, Inc.*, 608 F. Supp. 1261, 1264 (S.D.N.Y. 1985) ("*Passalacqua*"), a judgment against a defendant may be enforced against an alleged alter ego of the judgment defendant.  The statute of limitations for the enforcement of a judgment is twenty years versus the six year statute of limitations for actions based on 11 U.S.C. §§ 544(b) or 548.

Regarding the expense payments the Debtor made with respect to the Marital Residence, Trustee alleges in the proposed Amended Complaint that the expense payments were made for less than a reasonably equivalent value, the payments were made while the Debtor was insolvent and the Debtor incurred debts beyond his ability to pay those debts.  Additionally, the Amended Complaint alleges that the expense payments were made with the actual intent to hinder, delay, or defraud entities to which the Debtor became indebted.  The Amended Complaint also asserted that other unsecured creditors who could have avoided such expense payments existed on the petition date.

Conversely, in his opposition motion to amend the Complaint, the Debtor argues that the Trustee's claims for alter ego relief as set forth are futile.  The Debtor contends that the Trustee cannot enforce the Shiboleth Judgment by piercing the Trust because the Trustee concedes that the Appellate Division of the State Court of New York ("Appellate Division") vacated the Shiboleth Judgment.  In the absence of a judgment, an action against the Trust as an alter ego of the Debtor on the grounds of fraud would be time barred because a cause of action for fraud accrues at the same time for both the judgment debtor and its alter ego.  As a fraudulent conveyance action against the Debtor is time barred, an action against the Trust on alter ego grounds based upon an action for fraud would similarly be barred.  Moreover, the Debtor asserts

that (1) there was consideration, (2) no other unsecured creditors existed, (3) the use of the Marital Residence was a right that flowed to him as a husband of the Grantor, and (4) he was not insolvent. These are all issues of fact.

On June 30, 2009, the Court held a hearing on the Debtor's motion to dismiss and the Trustee's motion to amend the Complaint. After a review of the papers submitted by the parties, including the judgment entered by the Appellate Division on January 6, 2009, the Court notes that while the Trustee states that the Shiboleth Judgment was vacated, the Appellate Division only vacated the award for damages and remanded the Accounting Action back to the state trial court for a determination as to the appropriate amount of damages. Indeed, the Appellate Division affirmed the remainder of the Shiboleth Judgment other than the amount of damages. Accordingly, this Court must take judicial notice that there is still a state court judgment against the Debtor arising from the Accounting Action although the amount of the Accounting Action Judgment is uncertain at this time.

<u>DISCUSSION</u>

Federal Rule of Civil Procedure 15(a) as made applicable by Bankruptcy Rule 7015 provides that:

> (1) **Amending as a Matter of Course.** A party may amend the party's pleading once as a matter of course:
>    (A) before being served with a responsive pleading; or
>    (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.
> (2) **Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

See also *Stanziale v. Dalmia (In re Allserve Systems Corp.)*, 379 B.R. 69, 73 (Bankr. D.N.J. 2007) (quoting FED. R. CIV. P. 15(a)). As the Trustee's motion to amend the Complaint was filed after the Debtor's motion to dismiss was filed, the Trustee can only amend his Complaint upon

leave of the Court.  The decision by the court to allow leave to amend is discretionary.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Amendments are granted liberally in order to judge claims on the merits and prevent litigation from becoming a technical exercise in pleading.  *In re LG Phillips Displays USA, Inc. v. JPMorgan Chase Bank (In re LG Phillips Displays USA, Inc.)*, 395 B.R. 864, 868 (Bankr. D. Del. 2008) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).  In determining whether a party should be allowed to amend its complaint, the court will examine whether there is prejudice to the nonmoving party, whether the amendment is sought in bad faith, whether the leave of court would produce an undue delay in litigation, and whether the amendment is futile.  *In re Allserve Systems Corp.*, 379 B.R. at 73 (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984)).

With respect to the prejudice factor, the court considers whether the new claim would require the non-moving party to spend extensive resources to conduct discovery to prepare for trial, significantly delay the resolution of the dispute, or prevent the non-moving party from bringing a timely action in another jurisdiction. *Id.* (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  The strengthening of the moving party's legal position does not suffice as prejudice.  *Id.* (citing *Post Confirmation Trust of Fleming Cos., Inc. v. Target Corp. (In re Fleming Cos., Inc.)*, 323 B.R. 144, 148 (Bankr. D. Del. 2005)).

Regarding the delay factor, absent a showing of bad faith or undue prejudice, a mere delay does not suffice to deny amendment. *Id.* (citing *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)).

Futility is directly intertwined with the standard for a motion to dismiss.  A court may properly deny leave to amend where the amended complaint would not withstand a Rule 12(b)(6) motion to dismiss.  *In re LG Philipps Displays USA, Inc.*, 395 B.R. at 870 (citing *Massarsky v.*

*General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)).  A motion made pursuant to this rule challenges the legal sufficiency of a claim in order to determine whether the claim should go forward.  *In re Allserve Systems Corp.*, 379 B.R. at 75 (citing *Morris v. Azzi*, 866 F. Supp. 149, 152 (D.N.J. 1994)).  Even if recovery is remote and unlikely, a complaint must nevertheless proceed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In considering a motion to dismiss, the court must accept all the factual allegations in the complaint as true.  *United States v. Gaubert*, 499 U.S. 315, 327 (1991).  Additionally, all reasonable inferences should be drawn in favor of the plaintiff.  *In re Allserve Systems Corp.*, 379 B.R. at 75 (citing *Gary v. Air Group, Inc.*, 397 F.3d 183, 186 (3d Cir. 2005)).  While a complaint does not require detailed allegations, the plaintiff's complaint must provide more than labels and conclusions and a formulaic recitation of the elements of a cause of actions will not do.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).  The "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action".  *Id.* (quoting 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE §1216 PP. 2350236 (3d ed. 2004)).  A complaint does not need to allege all the evidence that would normally be required to succeed at trial.  *In re Allserve Systems Corp.*, 379 B.R. at 76 (citing *Kennicott Bros. Co. v. Fidanovski (In re Fidanovski)*, 347 B.R. 343, 348 (Bankr. N.D. Ill. 2006)).  However, if the claim does not allege enough facts to state a claim for relief that is plausible, then a motion to dismiss is proper.  *Twombly*, 540 U.S. at 570.

I.    <u>Whether There Was Undue Prejudice and Delay</u>.

Although prejudice and delay are factors to consider when deciding to grant leave to amend, neither the Debtor nor Malka has cited prejudice or delay in their opposition to Trustee's motion to amend.  As a result, this Court will not address them but will note there is a pending adversary proceeding before this Court by Amon Shiboleth against the Debtor under adversary proceeding number 08-8037, seeking a denial of the Debtor's discharge under 11 U.S.C. § 727. As that adversary proceeding has not yet been resolved, the proposed amendment of the Trustee's Complaint would not result in any prejudicial delay with respect to the Debtor's attempt to obtain a fresh start.

II.    <u>Whether Trustee Exercised Bad Faith</u>.

While the Defendants argued that Trustee's first Complaint was filed in bad faith, the Trustee has a legal right pursuant to Federal Rules of Civil Procedure 15(a) to amend his Complaint and such leave is generally given when justice so requires. Both the Debtor and Malka failed to set forth any case law nor any evidence to support their contention that the Trustee's conduct rose to the level of bad faith in order to justify the dismissal of the Complaint.

With respect to the Debtor's motion to dismiss the Trustee's claims for relief with respect to the property expense payments made pursuant to state court *pendente lite* orders, "[i]t is rare that the bankruptcy court will intrude on a state court divorce judgment and declare a transfer made therein to be a fraudulent conveyance.  However, rare does not mean never." *Pergament v. Cersosimo (In re Cersosimo)*, No. 07-8145, 2008 Bankr. LEXIS 3737, * 13 (Bankr. E.D.N.Y. 2009).  In *In re Cersosimo*, this Court held that the negotiated settlements revealed adequate consideration and there was no allegation of any fraud.  Unlike *Cersosimo*, here, Trustee has alleged fraud on the part of the Debtor in attempting to hinder, delay, and defraud creditors, that

10

there were other unsecured creditors who existed and could have voided the expense payments, and that there was no fair consideration.  Although there are issues of material fact in dispute, the Court must accept the allegations set forth in the Complaint as true and draw any reasonable inferences in favor of the plaintiff for purposes of a motion to dismiss.  Accordingly, the Court cannot find that the Trustee filed the motion to amend the Complaint in bad faith at this time without anything other than mere allegations.

III.    <u>Futility of the Complaint</u>.

A court may refuse to grant leave to amend where the amendment would be futile, *In re LG Phillips Displays USA, Inc.*, 395 B.R. at 870, or cannot withstand a motion to dismiss, *Massarsky*, 706 F.2d at 125 (3d Cir. 1983).

With respect to the Trustee's first four claims for relief, the Debtor argues that to the extent the Trustee is proceeding on the argument that the Trust is the Debtor's alter ego such action is time barred.  Where a claim based on fraud does not rely on a judgment, the applicable statute of limitations for fraud is six years and accrues at the same time, regardless of whether it is a claim against the alter ego or the corporation.  *Passalacqua*, 608 F. Supp. at 1264, n.1.  While Trustee's argument is confusing as far as whether this is an enforcement action or a stand-alone alter ego action, it is apparent to this Court after a review of the papers filed in this case that this is essentially an alter ego action based on a creditor's judgment rather than an alter ego action based upon fraud.  As discussed above, there is an existing judgment by the state court that has been affirmed in part by the Appellate Division and remanded in part for a determination as to the amount of damages.  Clearly, if the state court determines that no amount is due, then the causes of action based upon the Shiboleth Judgment would fail.

The statute of limitations in New York for actions to enforce a judgment is twenty years. *Passalacqua*, 608 F. Supp. at 1264 (citing *N.Y. C.P.L.R.* § 211 (McKinney 1984)); *The Commissioners of the State Ins. Fund v. Ramos*, 38 A.D.3d 445 (N.Y. App. Div. 2007). A plaintiff may attempt to enforce a judgment against persons or entities under the theory of piercing the corporate veil by claiming that such an entity is the alter ego of the judgment debtor. *Passalacqua*, 608 F. Supp. at 1264. An action to enforce a judgment against the alter ego of a judgment defendant would also be subject to a twenty-year statute of limitations. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 143 (2d Cir. 1991) (holding that if the defendants were proven to be the alter egos of the developers then the judgment would be enforceable against the defendants and the claims would not be barred by the statute of limitations for fraud). See also *JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. and Trade Servs. Inc.*, 295 F. Supp. 2d 366, 376–77 (S.D.N.Y. 2003).

To pierce the corporate veil under New York law, a plaintiff must prove that the owner exercised such control that the corporation became an instrumentality of the owner and that the owner used this control to commit a fraud, and the fraud results in an unjust loss or injury to the plaintiff. *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 91-92 (2d Cir. 2003). If the corporate veil is pierced, the corporation and those who have controlled the corporation are treated as one entity and thus the same statute of limitations is applicable to both the corporation and those who are using the corporation as an instrumentality. *Passalacqua*, 608 F. Supp. at 1264.

With respect to trusts, this Court previously stated in *Pergament v. Maghazeh Family Trust (In re Maghazeh)*, 310 B.R. 5, 16 (Bankr. E.D.N.Y. 2004) (citing *In re Vebeliunas*, 332 F.3d at 90), that the question regarding whether the alter ego theory relating to corporations is

applicable to trusts is a question of state law. Although the Second Circuit has not conclusively determined whether a trust may be pierced under New York law, the Second Circuit has noted that New York state courts would pierce the trust where the court found that the parties used the trusts to conceal assets or engage in fraudulent conveyances to avoid adverse judgments. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d at 143.

In this case, the Trustee seeks to enforce the Shiboleth Judgment against the Trust under claims one through four of the Amended Complaint on the ground that the Trust is the Debtor's alter ego. Trustee has set forth facts alleging that the Debtor has exercised complete dominion and control over the Trust and has committed a fraudulent act. In addition, the Trustee has alleged, *inter alia*, that Transfers I and II were made without consideration and at a time when the Debtor was insolvent and such transfers diminished the assets of the Debtor's bankruptcy estate. The Debtor in turn relies on *Tillman v. Lincoln Warehouse Corp.*, No. 83 Civ. 5381-CSH, 1983 U.S. Dist. Lexis 10676 (S.D.N.Y. December 19, 1983) for the proposition that the exercise of piercing the corporate veil is meaningless and futile if there is no enforceable liability to begin with and claims that in this case there is no enforceable liability. First, *Tillman* involved claims pursuant to the Debtor and Creditor Law, while the Trustee's claims before this Court are based on the recovery of assets pursuant to 11 U.S.C. §§ 541 and 542. Second, as discussed above, a judgment does exist although the amount of the judgment is uncertain at this time. The parties may be able to obtain the answer as to the amount of damages once the state court considers the issue on remand. Thus, an enforcement action cannot be found to be futile for purposes of amending a Complaint. Third, while the Debtor argues that there was no fraudulent act in that the formation of the trust was for the long term care of his child and that Shiboleth had knowledge of the Trust at the time it was formed and therefore an alter ego claim has no

independent life without the existence of a fraudulent act, it is premature and unnecessary at this juncture to determine whether the requisites to pierce the Trust are present at this time.

All the Trustee is required to do to survive a motion to dismiss is set forth a legally cognizable claim that is plausible on its face. The Trustee is not required to detail in his proposed Amended Complaint information or evidence that is normally required to succeed at trial because in considering a motion to dismiss, the Court is required to accept as true all factual assertions set forth in the proposed Amended Complaint and the Court needs to allow all reasonable inferences in favor of the Trustee. *Morris v. Azzi*, 866 F. Supp. at 152 (stating that the question before the court is not whether the plaintiff will ultimately prevail but whether he can prove any set of facts in support of his claims that would entitle him to relief).

The Debtor raises the question of whether the Trustee has standing to enforce a judgment of a single creditor. Under New York law, a trustee may assert alter ego claims and other similar claims when the claims benefit the entire bankruptcy estate and are not particular to one creditor or group of creditors. *Green v. Bate Records, Inc. (In re 10th Avenue Record Distributors, Inc.)*, 97 B.R. 163, 165-66 (S.D.N.Y. 1989). See also *Kalb, Voorhis & Co. v. American Fin. Corp.*, No. 92 Civ. 7754 (RPP), 1993 WL 180368, *6-7 (S.D.N.Y. May 24, 1993); *Keene Corp. v. Coleman (In re Keene Corp.), 164 B.R. 844, 851-852 (Bankr. S.D.N.Y. 1994); Goldhaber v. Tri-Equities, Inc. (In re Partridge Jr. & Sons, Inc.)*, 112 B.R. 593, 596 (Bankr. S.D.N.Y. 1990). In this case, to the extent the Trustee does succeed on his claims to show that the Residence Trust is the alter ego of the Debtor and that the Transfers I and II were inappropriate, then his interest in the Marital Residence would become property of the Debtor's bankruptcy estate under 11 U.S.C. § 541. Therefore, the Trustee's causes of action to enforce the Shiboleth Judgment under the

theory of alter ego would benefit not just Shiboleth but all the Debtor's unsecured creditors. Accordingly, the Trustee has standing to bring claims one through four.

Similarly, with respect to claims five through ten, the Trustee has alleged that the expense payments made by the Debtor for the benefit of the Trust were made without consideration, while the Debtor was insolvent or incurred debts beyond his ability to pay, and were made with the intent to hinder, delay or defraud persons to which the Debtor had become indebted. While the Debtor also disputes these allegations, the Court again must draw all inferences in favor of the Trustee. The Trustee will have a heavy burden to prove the allegations made. The Debtors have presented allegations of good defenses.

However, there are questions of material fact as to, *inter alia*, whether Shiboleth knew of Transfers I and II and waived any right to complain, whether the Trust was established in order to avoid creditors, whether the Yerushalmis maintained the Trust even after their child passed away in order to shield assets from creditors, whether consideration was given for Transfers I and II and the expense payments made on behalf of the Trust with respect to the Marital Residence, whether a creditor other than Shiboleth exists who would be entitled to bring an action to avoid the transfers, whether the Debtor was insolvent at the time of the transfers and whether the transfers diminished the assets available for the Debtor's bankruptcy estate. The Trustee may not be able to support the allegations made in his Amended Complaint at trial. However, because the Court finds that the Trustee has set forth legally cognizable claims and such claims may not be futile, the Trustee should be allowed to amend his Complaint and be given an opportunity to proceed to obtain evidence needed in order to resolve these disputed facts. In addition, as the outcome of this adversary proceeding would affect assets available for

distribution to all the Debtor's creditors, justice would require that the Trustee be given an opportunity to amend his complaint and prove his claims.

As to the Defendants' allegations that the Trustee has wrongfully omitted the mortgagee from this adversary proceeding, the Court finds that the mortgagee is not a necessary party to this proceeding.

<u>CONCLUSION</u>

Based on the foregoing, the Debtor's motion to dismiss the Complaint is denied and the Trustee's motion to amend his Complaint is granted.

So ordered.

Dated:  Central Islip, New York
          September 14, 2009

                                        _***s/Dorothy Eisenberg***_____
                                        Dorothy Eisenberg
                                        United States Bankruptcy Judge